IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHRISTOPHER MAGEE and
JAMYRA MAGEE                                                              Plaintiffs

And

UPS and Liberty Mutual Insurance Company                                  Intervenors

v.                                                         No.: 2:20-cv-183-TBM-MTP

MICHAEL R. NOE d/b/a
ON TIME SHIPPING, and
JAMES L. HILLIARD                                                         Defendants

**MEMORADNUM IN SUPPORT OF DEFENDANTS'
RESPONSE TO PLAINTIFFS' MOTION FOR SANCTIONS**

Defendants James L. Hilliard and Michael Noe d/b/a On Time Shipping submit the following memorandum in support of their response to the Motion for Sanctions submitted by Plaintiffs on September 14, 2021 (Doc. 104).

### I.  Introduction

Plaintiffs have alleged that James Hilliard testified falsely when he was asked in his deposition how the accident in this case occurred. They allege that Hilliard committed perjury and that Hilliard's acceptance of a $3,500 settlement in compensation for his injuries constituted wire fraud, mail fraud and insurance fraud. (Doc. 104, at 5-6) Plaintiffs request several forms of relief including a judgment by default against Hilliard (barring Hilliard from defending himself in this case further) and damages in excess of three million dollars. (Doc. 104, at 6) Plaintiffs also ask the Court to refer the matter to the U.S. Attorney for criminal prosecution of Hilliard. (*Id.*) For reasons stated below, Plaintiffs have not come close to meeting their burdens of proof; all requests for relief contained in the motion should be denied.

Plaintiffs' allegation of perjury is premised on two major inaccuracies: (a) that there is no credible evidence corroborating Hilliard's testimony that Magee was at fault in causing the accident; and (b) that electronic data provided by UPS accurately and reliably proves that Magee's version of the accident is correct (and that Hilliard's is not). Both premises are demonstrably false.

Plaintiffs' allegations of fraud fail for the same reason – they are premised on perjury, which did not occur. The allegations of fraud also fail for the additional reason that the settlement was paid to Hilliard before any alleged false statement was made – the settlement agreement was confirmed on June 12, 2019 – Hilliard's deposition took place in February 2021.

## II. ARGUMENT

### 1. Legal Standards

**Perjury**

In the criminal context, an individual commits perjury if he provides 'false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.'" *United States v. Johnson*, 822 F. App'x 258, 262 (5th Cir. 2020) (quoting *United States v. Dunnigan*, 507 U.S. 87, 94, 113 S. Ct. 1111, 122 L. Ed. 2d 445 (1993)); *see* § 3C1.1, cmt. n.2. Mere inconsistencies in a witness's testimony and contradictory testimony from other witnesses is not sufficient to establish perjury. *Better Bags, Inc. v. Ill. Tool Works, Inc.*, 939 F. Supp. 2d 737, 752 (S.D. Tex. 2013), Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (citing *Little v. Butler,* 848 F.2d 73, 76 (5th Cir. 1988) (inconsistencies in witnesses' testimony at trial are to be resolved by trier of fact and do not suffice to establish that certain testimony is perjured)).

Although Plaintiffs have urged this Court to find that Hilliard committed perjury, they have not stated the applicable burden of proof or standard of review. If an allegation of perjury is made

post-trial, the perjury must be proven by clear and convincing evidence. *Diaz v. Methodist Hosp.*, 46 F.3d 492, 496 (5th Cir. 1995) ("A rule 60(b)(3) assertion must be proved by clear and convincing evidence, and the conduct complained of must be such as to prevent the losing party from fully and fairly presenting its case.") A *criminal* conviction for perjury must be based on evidence that is "strong, clear, convincing and direct." *United States v. Forrest*, 639 F.2d 1224, 1226 (5th Cir. 1981). Either standard is more demanding than the summary judgment standard of Rule 56, under which the non-movant may prevail if he shows "a genuine dispute as to any material act."

**Mail Fraud**

Again, Plaintiffs' allegations of fraud are premised on perjury, which did not occur. The mail fraud statute requires that (1) the defendant participate in a scheme or artifice to defraud, (2) the mails be used to execute the scheme, and (3) the use of the mails was "caused by" the defendant or someone else associated with the scheme. *United States v. Davis*, 752 F.2d 963, 970 (5th Cir. 1985). The statute does not, however, reach every business practice that fails to fulfill expectations or every breach of contract, *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980), or every breach of fiduciary duty, *United States v. Goss*, 650 F.2d 1336, 1346 (5th Cir. 1981). Rather, there must have been "a recognizable scheme formed with specific intent to defraud." *Goss*, above, 650 F.2d at 1346. In addition, the defendants must have made fraudulent representations or omissions reasonably calculated to deceive. *United States v. Finney*, 714 F.2d 420, 423 (5th Cir. 1983).

**Wire Fraud**

To convict a defendant of **wire fraud** in violation of 18 U.S.C. § 1343, the government must prove beyond a reasonable doubt that he (1) participated in a scheme or artifice to defraud;

(2) with the intent to defraud; and (3) used, or caused the use of, interstate wire transmissions for the purpose of executing the scheme or artifice to defraud. *United States v. Near*, 708 F. App'x 590, 597 (11th Cir. 2017) citing *United States v. Martin*, 803 F.3d 581, 588 (11th Cir. 2015).

**Summary Judgment**

As shown herein, the statements claimed by the Plaintiffs as perjury or fraud on the part of James Hilliard do not come close to meeting either standard. In fact, the Plaintiffs' claims are so all-encompassing that they essentially rise to a "de-facto" Motion for Summary Judgment which asks this court to essentially weigh the facts and determine that one side is telling the truth and the other side is lying. Therefore, the standard for summary judgment must also be examined.

Summary judgment is appropriate only when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348,

89 L. Ed. 2d 538 (1986).The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial. *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims. *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed. 2d 127 (1994).

To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts. *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1996)). The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence." *Little*, 37 F.3d at 1075. Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party. *Anderson*, 477 U.S. at 248. Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075. Hearsay evidence and unsworn documents that cannot be presented in a form that would be

admissible in evidence at trial do not qualify as competent opposing evidence. Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

### 2. Hilliard's testimony that Magee caused the accident is corroborated by the unbiased testimony of a disinterested witness.

Defendant James Hilliard was driving his eighteen-wheeler westward on Highway 98 toward Columbia on April 18, 2019. Hilliard was in the right lane. As Hilliard approached a cluster of residences to the west of Pierce Road, Plaintiff Christopher Magee was stopped in his UPS package truck in the cut-through of the median. Magee left the median, crossed the left lane and then immediately moved into the right lane to turn into a driveway where he wanted to make a delivery. Hilliard had insufficient time to stop or slow his eighteen-wheeler after the sudden movement by Magee into his lane; he did not steer to the left to avoid hitting Magee because there were other vehicles in the left lane. Hilliard slammed on his brakes but was unable to stop in time to avoid hitting the back of Magee's truck. (Ex. A, Hilliard depo. at 5-7)

Hilliard's testimony is corroborated by Emma Pritchard, who lives at the location of the accident. Ms. Pritchard testified that just before the collision, she was standing on her front porch looking at a **UPS truck stopped in the median** directly in front of her house. She turned to go back inside her house, and almost immediately she heard the crash: "About the time I got back in the house, we heard the crash." (Ex. B, Pritchard depo. at 9) "I had hardly got back into the foyer before I heard the accident, but of course I don't know how long that was." (*Id.* at 21-22)

Sometime after the accident occurred, a second UPS truck (driven by Steve Askew) arrived at the scene and stopped in the cut-through in the median; by that time, traffic had backed up, and Askew had to wait until drivers allowed him to cross to the shoulder of the westbound lanes, where five or ten other vehicles were already parked on the side of the road. (Ex. C, Askew depo. at 10-11); Askew then drove west and parked his truck near Magee's overturned vehicle.

6

Photographs made by the highway patrol show both UPS trucks at the scene; both are brown UPS package trucks –Askew's truck is sitting upright and Magee's is overturned. Ms. Pritchard testified that she did not see the second UPS truck arrive. (Ex. B at 28). Pritchard was shown photographs of the trucks and was asked by plaintiff's attorney to admit that she did not know which of the two trucks she saw in the median. She replied, "I would say it was this one" (referring to "the wrecked one") "considering that it was just . . . a few seconds or less from the time I saw the truck to the time the accident happened." (Ex. B at 37-38).[1]

Magee testified there were no other UPS trucks in the median in question near the time of the accident. (Ex. D, Magee depo. at 48-49, 69-70). Magee and UPS both were asked in discovery to identify every UPS truck in the vicinity at the time. Only Magee's truck was identified. Askew's truck arrived later, when traffic was backed up and accumulated on the side of the road. **If Ms. Pritchard observed a UPS truck in the median "seconds" before the collision, it was the truck being driven by Magee.** Pritchard's testimony thus corroborates Hilliard's testimony that Magee was in the median right before the collision.

### 3. **The telematics data relied on by Plaintiffs is inaccurate, unreliable and inadmissible.**

Plaintiffs allege that telematics data produced by UPS "is reliable and accurate" and "eliminates any possibility that Hilliard's version of the accident is truthful." (Doc. 104 at 5) The data in question is attached to Defendants' Response as Exhibit E. The report states on its face that is inaccurate and unreliable. The first page identifies several "malfunction[s]," "problem[s]," "erroneous data" and "data unintentionally destroyed." (Ex. E, at 1) These numerous errors,

---

[1] Pritchard's deposition was recorded by video. This portion of her testimony is found on the recording from 39:53 to 40:09. The court reporter incorrectly transcribed this portion of the testimony as "considering that it was just a – like, a few seconds or at least by the time I saw the truck at the time of the accident."

according to the report, "undermine the accuracy and reliability" of the data. The first page of the report is quoted in full below:[2]

> Based upon independent testing conducted by UPS, the Telematics data recorded in the accident key mode consistently demonstrated performance tolerances, **which undermine the accuracy and reliability of the data fields**, including, but not limited to the following:
>
> - The UPS package car's electrical system was compromised during the subject accident;
> - There was an open circuit or communication failure within the Telematics module;
> - There was a short circuit within the Telematics module;
> - There was a sensor drift or improper sensor calibration;
> - There was a voltage drift in the power circuitry;
> - There were software problems with the Telematics module;
> - There was a microprocessor malfunction;
> - The Telematics module was chemically or thermally damaged during the accident;
> - There were environmental issues such as moisture or contaminant intrusion during manufacturing or while in use;
> - The geographic location, i.e. urban environments, of the package car diminished satellite signal quality; and/or
> - Once minimum accident speed is exceeded, accident data is overwritten approximately every 6,000 records or second data entry; prior to June 16, 2011 minimum speed was set to 2 MPH, after June 16, 2011 minimum speed was set to 0 MPH.
>
> Based upon independent testing conducted by UPS, the Telematics data reported in the accident key mode consistently demonstrated performance tolerances, **which undermine the accuracy and reliability of the data fields**, including, but not limited to the following:
>
> - **There was erroneous data written into the data print-out during the retrieval process**;
> - **There was data unintentionally destroyed during the retrieval process;**
> - The data in accident key mode was overwritten;
> - The accident key malfunctioned during reporting; and/or
> - Accident data may be co-mingled with general data if the general data was downloaded before the accident data.

(Ex. E, UPS 00081 – UPS 00089, at 1) (emphasis added)

---

[2] More disclaimers appear on page 2 of the report. (Ex. E at 2)

Defendants attempted to inquire further about the telematics data by filing a notice of deposition of UPS under Rule 30(b)(6) of the Federal Rules of Civil Procedure. (*See* Doc. 69 and Doc. 82). UPS opposed the taking of the deposition and requested a conference with the magistrate to resolve the disagreement over whether the deposition should go forward. (Ex. F, email from UPS attorney Eric Toney to magistrate dated July 19, 2021). During the conference, UPS explained that it had no employees who could testify whether the telematics data is reliable. As a result of the conference, Defendants agreed to forego the deposition in consideration for written admissions from UPS that it is "unable to state whether the telematics data . . . is reliable" and "unable to state whether the data was affected" by any of the factors listed on pages 1 and 2 of the report. (Ex. G, UPS responses to requests for admissions 4 and 5).

Plaintiffs claim the telematics data is "scientific" and "empirical" and "clearly set out in the reports" of their accident reconstruction expert. (Doc. 104 at 2). These claims merely beg the question. Neither Plaintiffs nor their expert have stated how the factors listed in pages 1 and 2 of report affect the data. Plaintiffs' expert merely states that the data is consistent with Magee's version of the accident; he does not state what "data [was] unintentionally destroyed," what "malfunction[s]" occurred or what "erroneous data" was "written into the data print-out during the retrieval process." (Ex. E, at 1 (telematics data); Ex. K (report of Benjamin Smith)).

In this case, the Plaintiffs are essentially asking the Court to make a ruling based on expert data which is on its face, unreliable. A party offering expert testimony must demonstrate that the expert's findings and conclusions are based on the scientific method, and, therefore, are reliable. *Moore v. Ashland Chemical, Inc.,* 151 F. 3d 269 (5th Cir. 1998). In *Moore,* the Fifth Circuit noted this requires "some objective, independent validation of the expert's methodology," and the "expert's assurances that he or she has utilized generally accepted scientific methodology is

insufficient." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1316 (9th Cir. 1995), *cert. denied,* 516 U.S. 869 (1995) (*Daubert II*)). Thus, the Plaintiff "must prove by a preponderance of the evidence that the testimony is reliable." *Id.* (citing *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 745 (3d Cir. 1994), *cert. denied sub nom., Gen. Elec. Co. v. Ingram,* 513 U.S. 1190 (1995)).

Fed. R. Evid. 702 specifically requires that an expert's testimony be based upon sufficient facts or data. Fed. R. Evid. 702(b). Phrased differently, proposed expert testimony "must be supported by appropriate validation — i.e. good grounds, based on what is known." *Daubert*, 509 U.S. at 590. "**Where an expert's opinion is based on insufficient information, the analysis is unreliable.**" *Paz v. Brush Engineered Materials Inc.*, 555 F.3d 383, 388 (5th Cir. 2009); *see also Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721. 725 (5th Cir. 2009) (emphasis added). Therefore, expert testimony must be supported by "more than subjective belief or unsupported speculation." *Paz*, 555 F.3d at 388. "Although the *Daubert* reliability analysis is flexible and the proponent of expert testimony need not satisfy every one of its factors, the existence of sufficient facts is . . . in all cases mandatory." *Moore v. Int'l Paint, LLC*, 547 F. App'x 513, 515 (5th Cir. 2013). "[A] district court has broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 354 (5th Cir. 2007).

Under *Daubert,* **"any step that renders the analysis unreliable ... renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology."** *Curtis v. M&S Petroleum, Inc.,* 174 F.3d 661, 670-71 (5th Cir. 1999) (quoting *Moore,* 151 F.3d at 279 n. 10, emphasis added). Therefore, a trial court asked to admit scientific evidence must determine "whether the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Moore,*

151 F.3d at 278 (quoting *Rosen v. CibaGeigy Corp.,* 78 F.3d 316,318 (7th Cir. 1996)); *Garcia v. BRK Brands, Inc.,* 266 F. Supp. 2d 566, 577 (S.D. Tex. 2003). Also, opinions developed expressly for purposes of testifying require heightened scrutiny. *Daubert v. Merrill Dow Pharmaceuticals, Inc.,* 43 F.3d 1311, 1317 (9th Cir. 1995).

Under these standards, the telematics data relied upon by Plaintiffs is unreliable and should not be admitted; nor should expert testimony that simply assumes the data is reliable and correct.

### 4. The DIAD data relied on by Plaintiffs supports Hilliard's version of the accident.

Plaintiffs also rely on data taken from UPS's DIAD system. Plaintiffs are incorrect in alleging that this data supports Magee's version of the accident. (Doc. 104 at 3). Attached as Exhibit H is a printout of the DIAD data which Plaintiffs allege "proves that Mr. Magee had been making deliveries north of Highway 98 immediately prior to the accident." (Doc. 104 at 3). The last delivery in the printout shows the address 29 Greater Brushy Creek Road, which is *south* of highway 98. If Magee drove to the accident scene immediately after making this delivery, then he had to enter highway 98 from the south, not from the north. (See Ex. I, map of Highway 98 at Greater Brushy Creek Road.) Further, after making the delivery on Greater Brushy Creek Road, Magee could have driven west on Christopher Road and entered highway 98 from a location west of the accident location. From that point he would have driven to the cut-through in the median just east of his next destination, which is the cut-through immediately in front of Emma Pritchard's residence. (Ex. J, map of Highway 98 and Christopher Road). Thus, the DIAD data corroborates the testimony of Ms. Pritchard and James Hilliard, not the testimony of Christopher Magee that he entered highway 98 from the north.

Plaintiff's reconstruction expert cites the DIAD data in his report, but his list of deliveries *omits* the delivery at 29 Greater Brushy Creek Road, with no explanation for its omission. (Ex. K at 14).

### 5. Plaintiffs have shown no evidence that Hilliard made a statement before June 12, 2019, about how the accident occurred, much less a statement that influenced UPS or Liberty Mutual to pay him a settlement.

The allegations of wire fraud, mail fraud and insurance fraud are baseless because plaintiff has not identified a statement by Hilliard, other than his deposition testimony, regarding the subject matter of the claim. Hilliard's deposition took place in February 2021, long after the single settlement discussion that occurred on June 12, 2019. The only statements attributed to Hilliard in that discussion are contained in the transcript of Hilliard's conversation with Jordan Mead, the of Liberty Mutual representative. (Doc. 104-7). In that transcript, Hilliard says "Yes" in response to five questions from Mr. Mead, none of which inquire about how the accident occurred. Hilliard provides no description of the accident. This is not evidence of a "recognizable scheme formed with specific intent to defraud." *Goss*, above, 650 F.2d at 1346. Nor is there evidence that Hilliard made fraudulent representations or omissions reasonably calculated to deceive. *United States v. Finney*, 714 F.2d 420, 423 (5th Cir. 1983).

Moreover, even if Plaintiffs could identify a statement by Hilliard describing the accident *before* this transcribed conversation, they would also have to show that the statement was "capable of influencing the decision" of UPS or Liberty Mutual to pay the settlement. *United States v. Harms*, 442 F.3d 367, 372 (5th Cir. 2006). UPS and Liberty Mutual conducted their own investigations of the accident; they could have interviewed Christopher Magee (and most likely *did* interview him) and could have decided on the basis of Magee's statements not to pay Hilliard. Also, UPS and Liberty Mutual had access before June 12, 2019, to the electronic data which

Plaintiffs contend "eliminates the possibility that Hilliard's version of the accident is truthful." (Doc. 104 at 5). Christopher Magee testified that during the week immediately following the accident, he had a discussion with Justin Beeson, his supervisor at UPS, in which Beason told him that he had looked at telematics data which showed Magee was traveling 42 miles per hour at the time of the accident. (Magee depo. at 73, 85-86). UPS and Liberty Mutual were free to form an opinion about the data similar to Plaintiffs (i.e., that it proved Magee's version of the accident and disproved Hilliard's) and to refuse on that basis to pay any settlement to Hilliard. There is no evidence that either company's decision was influenced by something Hilliard said about how the accident occurred.

## CONCLUSION

Plaintiffs have failed to meet their burden of proving perjury or fraud. James Hilliard's description of the accident is corroborated by Emma Pritchard, a disinterested, unbiased witness. The telematics data that Plaintiffs contend indisputably proves the falsity of Hilliard's testimony is itself fraught with errors and malfunctions and is, according to its own terms, inaccurate and unreliable. The DIAD data supports Hilliard's and Pritchard's testimony, not Magee's. Applying the Rule 56 standard, the testimony of Hilliard alone creates a genuine issue of material fact sufficient to defeat summary judgment; the corroborating testimony of Pritchard puts that conclusion beyond dispute, and the data relied on by Plaintiffs is insufficient to offset it. The burdens of proving perjury and fraud are even more demanding. Plaintiffs' allegations fail under those standards because the evidence supporting Magee's version of the accident is not "clear, convincing, strong [or] direct," and Hilliard's testimony does not prevent Plaintiffs from adequately presenting their case. *See Diaz* and *Forest, supra.* Plaintiffs have not established the most basic element of fraud – they have not identified a statement by Hillard describing the

accident before the settlement conversation on June 12, 2019. Nor have they shown that any such statement would have influenced UPS or Liberty Mutual to come to a conclusion they would not otherwise have reached on the basis of their independent investigations of the accident.

For the foregoing reasons, Plaintiffs' motion should be denied.

This the 24th day of September, 2021.

>
> */s/Robert S. Mink*
> ROBERT S. MINK (Miss. Bar No. 9002)
> MINK & MINK, PLLC
> 5760 I-55 North, Suite 300
> Jackson, Mississippi 39211
> Tel: (601) 351-9335
> rob@minklaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will provide notice to all counsel of record as follows:

Mark A. Nelson MB 3808
Ned A. Nelson MB 105712
Samuel D. Newman
7 Woodstone Plaza, Suite 7
Hattiesburg MS 39402
mark@nelsonfirm.law
ned@nelsonfirm.law

John G. Jones MC 3217
Griffin Jones Law Firm, PLLC
P.O. Box 689
Jackson MS 39205-0689
john@griffinjoneslaw.com

Jill R. Miller
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809
jmiller@twpdlaw.com

Eric Toney
Copeland, Cook, Taylor and Bush
1076 Highland Colony Parkway
Ridgeland, Mississippi 39157
etoney@cctb.com

This the 24th day of September, 2021.

                                                  *(s) Robert S. Mink*
                                                  Robert S. Mink