## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MAGEE and<br>JAMYRA MAGEE | § <br> § <br> § | PLAINTIFFS |
| and | § <br> § | |
| UPS and LIBERTY MUTUAL<br>INSURANCE COMPANY | § <br> § <br> § | INTERVENOR-PLAINTIFFS |
| v. | § <br> § <br> § <br> § | Civil No. 2:20cv183-HSO-MTP |
| MICHAEL R. NOE *d/b/a On Time*<br>*Shipping* and JAMES L. HILLIARD | § <br> § <br> § | DEFENDANTS |

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION [154] IN LIMINE

BEFORE THE COURT is the Motion [154] in Limine filed by Defendants
Michael R. Noe d/b/a On Time Shipping and James L. Hilliard.   The Motion [154]
is fully briefed.   For the reasons that follow, Defendants' Motion [154] in Limine
will be granted in part, to the extent it seeks a ruling that the UPS Telematics data
is not self-authenticating based upon the current record before the Court,[1] and
denied in part, to the extent Defendants seek to exclude the expert testimony of
Benjamin N. Smith and paragraph 4 of Matthew Barr's Affidavit [144-1].

---

[1] Though the UPS Telematics data is not self-authenticating, the Court leaves open the
possibility Plaintiffs might be able to produce sufficient evidence at trial to authenticate the
data.

## I.   BACKGROUND

This case arises out of a vehicular collision between a tractor-trailer driven by Defendant James L. Hilliard ("Mr. Hilliard") and a United Parcel Service, Inc. ("UPS") delivery truck driven by Plaintiff Christopher Magee ("Mr. Magee"), which occurred on April 18, 2019, on U.S. Highway 98 in Marion County, Mississippi. *See* Compl. [1] at 2-3.   Mr. Magee and his wife, Plaintiff Jamyra Magee, have filed suit against Mr. Hilliard and his employer, Defendant Michael R. Noe d/b/a On Time Shipping, advancing claims for negligence, negligence per se, negligent infliction of emotional distress, and loss of consortium arising out of the incident. *See id.* at 5-6.[2]

The two drivers involved present sharply differing accounts of the events leading up to the collision.   Mr. Magee has testified that he had been traveling in the right westbound lane of Highway 98 for about a half of a mile before the collision occurred.   *See* Mot. [154] at 1-2 (citing deposition testimony).   In contrast, Mr. Hilliard maintains that he was driving west on Highway 98 when he saw "a UPS truck up ahead, on the left, stopped in the median."   *Id.* at 2.   According to Defendants, "[t]he UPS truck moved from the median into the left westbound lane, and then moved immediately into the right lane in front of Hilliard, who slammed on his brakes but could not avoid hitting the rear of the UPS truck."   *Id.*

During discovery, UPS produced what the parties refer to as "Telematics

---

[2] UPS and Liberty Mutual Insurance Company have filed a Complaint in Intervention [11] based upon workers' compensation benefits paid to Mr. Magee.   *See* Compl. in Intervention [11].

data," which Defendants now seek to exclude from trial.  *Id.*; Ex. [110-5].   This data was produced in a table format and purports to be data from the UPS truck which documents the truck's movement leading up to the collision.   The table contains the following headings: "Date/Time (GMT 0)," "Longitude," "Latitude," "Speed (Kms/Hour)," "Engine ON," "Backing," "Braking," "Bulk Head Open," "Seat Belt OFF," "Reason."   *See* Ex. [110-5] at 3-9.   The data is accompanied by a two-page disclaimer from UPS's Legal Department, which states that based upon independent testing conducted by UPS, "the Telematics data recorded in the accident key mode consistently demonstrated performance tolerances, which undermine the accuracy and reliability of the data fields."   *Id.* at 1.

According to Defendants, they sought to take UPS's deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) to inquire about the Telematics Data and the disclaimer, but "UPS opposed the taking of the deposition."   Mot. [154] at 3. Defendants state that at a conference held with the Magistrate Judge, "counsel for UPS stated that UPS had no employees who could testify whether the telematics data is reliable," and for this reason Defendants agreed to forego the deposition if UPS provided certain written admissions concerning the data.   *See id.*

Defendants then propounded Second Requests for Admissions to UPS, to which UPS responded as follows:

> **REQUEST FOR ADMISSION NO. 4**: Regarding the telematics data produced in this case (UPS 00083-89), please admit that UPS is unable to state whether the data was affected by the performance tolerances listed in the Telematics Disclaimer (UPS 00081-82).

> **RESPONSE NO. 4**: UPS has no knowledge or information regarding whether the data collected and produced in this cause falls within or

outside of the performance tolerances listed in the Telematics Disclaimer. The accuracy and reliability of the data requires analysis and opinion testimony by experts who specialize in, among other things, accident reconstruction. UPS has not retained an expert to reconstruct the accident and analyze the accuracy or reliability of the data. Accordingly, UPS admits this request.

**REQUEST FOR ADMISSION NO. 5**: Please admit that UPS is unable to state whether the telematics data produced in this case (UPS 00083-89) is reliable or unreliable.

**RESPONSE NO. 5**: UPS has no knowledge or information regarding whether the data collected and produced in this cause is reliable or unreliable. The accuracy and reliability of the data requires analysis and opinion testimony by experts who specialize in, among other things, accident reconstruction. UPS has not retained an expert to reconstruct the accident and analyze the accuracy or reliability of the data. Accordingly, UPS admits this request.

Ex. [110-7] at 1-2.

Plaintiffs have retained an accident reconstruction expert, Benjamin N. Smith, to testify in this case. *See* Mot. [154] at 4; Ex. [110-11] (Mr. Smith's expert report). Defendants state that Mr. Smith's opinions rely primarily on the UPS Telematics data, which Mr. Smith finds to be consistent with Mr. Magee's description of the accident, but Defendants point out that Mr. Smith "does not mention the 'Telematics Disclaimers' that make up the first two pages of the Telematics data." Mot. [154] at 4. Defendants' accident reconstruction expert, Preston Scarber, "would not rely on the Telematics data" because of the "numerous disclaimers citing inaccuracies and malfunctions." *Id.* at 5.

Prior to the reassignment of the case to the undersigned, Defendants filed Motions [125], [126] in Limine to exclude the Telematics data and the portion of Mr. Smith's testimony that relies upon the data. *See* Mot. [125] at 7. At a hearing on

4

the Motions held before the previously-assigned district judge, the Court found that

proper authentication of the data under Rule 902 was lacking at that time, *see* Tr.

[158-5] at 13-14, but that "the plaintiffs will have an opportunity to do more by

presenting another affidavit pursuant to 902(13) or by presenting testimony at

trial," *id.* at 14.   The Court observed that "[i]t very well may be that plaintiffs

ultimately call a witness from UPS that can testify concerning how this data was

retrieved," but because Plaintiffs had "not presented those specifics" at that time,

the Motion [125] to exclude the Telematics data was denied without prejudice.   *Id.*

at 11-12.

> The Court did not express any opinion whether Plaintiffs had
>
> presented enough through the evidence in the record and through the
> affidavits in the record and through the deposition testimony as to
> whether the plaintiffs will not have to do any more at trial by calling
> another witness, or will not have to present another affidavit from UPS.

*Id.* at 12.   However, the Court did make several other relevant findings: (1) it did

"not find that the disclaimer in and of itself is persuasive as to the inadmissibility of

the telematics data," and (2) it found that the data "is not hearsay."   *Id.* at 12-13.

As for Defendants' earlier Motion [124] to Exclude Mr. Smith, the Court determined

that any reliability questions concerning the Telematics data "do not rise to the

level to where Ben Smith would not be allowed to testify under a *Daubert* analysis,"

Tr. [158-5] at 17; *see Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579,

589 (1993), and it denied Defendants' Motion [124] in Limine regarding Mr. Smith,

*see id.*; Order [141] at 3.

    Plaintiffs then produced the Affidavit of Matthew Barr to address the

Telematics data and the disclaimer, as well as an Affidavit from Ralph Gallagher, the Telematics Manager for UPS.   *See* Mot. [154] at 6.   Mr. Barr identifies the data as the "Telematics data for package car #571163 and its driver from April 18, 2019," and states that the Telematics disclaimer is a standard one that is not unique to this case.   Barr Aff. [144-1] at 1.   Mr. Gallagher likewise reports that the records attached to his Affidavit include "Telematics data for package car #571163 and its driver from April 18, 2019," and explains how the data was requested, uploaded, searched, and downloaded.   Gallagher Aff. [144-2] at 1.

Defendants have now filed the present Motion [154] in Limine asking the Court to exclude "paragraph 4 of the affidavit of Matthew Barr (Doc. 144-1)," the Telematics data itself, and the testimony of Mr. Smith that relies on the Telematics data.   *See id.* at 16.   Plaintiffs have filed a Response [159] in opposition to the Motion [154], and Defendants have filed a Reply [160].

## II.   DISCUSSION

A.   The authenticity and independent admissibility of the Telematics data itself

1.   The parties' arguments

According to Defendants, the "Telematics data at issue can be admitted only if Plaintiffs first satisfy the authentication requirement of Fed. R. Evid. 902(13)." Mot. [154] at 7.   Defendants maintain that the disclaimers that accompanied UPS's production of the data "are not phrased as mere 'boilerplate' statements *that might or might not* apply to a particular set of data," *id.* at 10 (emphasis in original), instead they mostly apply to this specific accident and preclude authentication of the evidence due to its unreliability as reflected in the disclaimers, *id.* at 8-10.

6

Without evidence that the Telematics data is accurate, Defendants contend that it cannot be properly authenticated under Rule 902, even with the Affidavits of Mr. Barr and Mr. Gallagher.   *See id.* at 7-10; Reply [160] at 1-6.

Plaintiffs respond that they "believe they have sufficiently authenticated the Telematics GPS data."   Resp. [159] at 4; *see id.* at 16-17.   According to Plaintiffs, Mr. Gallagher's Affidavit satisfies the authentication requirements of Federal Rule of Evidence 902(13), while Mr. Barr's Affidavit satisfies those of Rule 902(11), concerning the Telematics data.   *Id.* at 11.   If the Court is not persuaded that the Affidavits satisfy the authentication requirement, "Plaintiffs respectfully request and expressly preserve their right to call Mr. Gallagher or another qualified UPS witness to trial to testify as to the authenticity of the Telematics Data from Mr. Magee's vehicle."   *Id.*   Plaintiffs further assert that Mr. Smith's expert testimony confirms the reliability and accuracy of the Telematics data, such that "the presence of the factors listed in the legal disclaimer can be systematically eliminated."   *Id.* at 6.   "At most, the disclaimer brings into question the accuracy of the data, not its admissible [sic] or relevance," which can be addressed on cross-examination.   *Id.*

2.   Relevant legal authority

The question of the admissibility of the Telematics data itself turns here on the parties' dispute as to the self-authentication requirements set forth in Federal Rule of Evidence 902,[3]  which provides that certain "items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be

---

[3]  Defendants do not argue that the data is hearsay, *see* Mot. [154]; Reply [160], and the Court previously determined that it is not hearsay, *see* Tr. [158-5] at 13.

admitted." Fed. R. Evid. 902.    In attempting to establish authenticity of the

Telematics data, Plaintiffs' Response relies upon Rules 902(11) and 902(13).    *See*

Resp. [159] at 11.

Rule 902 states that one type of self-authenticating evidence is:

[t]he original or a copy of a domestic record that meets the requirements
of Rule 803(6)(A)-(C), as shown by a certification of the custodian or
another qualified person that complies with a federal statute or a rule
prescribed by the Supreme Court.

Fed. R. Evid. 902(11).

Another type of evidence that is self-authenticating is:

[a] record generated by an electronic process or system that produces an
accurate result, as shown by a certification of a qualified person that
complies with the certification requirements of Rule 902(11) or (12). The
proponent must also meet the notice requirements of Rule 902(11).

Fed. R. Evid. 902(13).    The certification requirements referred to in Rule 902(13)

include a "certification of the custodian or another qualified person that complies

with a federal statute or a rule prescribed by the Supreme Court" for a domestic

record of a regularly conducted activity. Fed. R. Evid. 902(11).

3.    <u>Whether Plaintiffs have shown that the Telematics data is self-
      authenticating</u>

a.    *Self-authentication under Rule 902(11)*

Rule 902(11) provides that evidence is self-authenticating if it satisfies the

requirements of Rule 803(6)(A)-(C), as shown by a proper certification.    *See* Fed. R.

Evid. 902(11).    Under Rule 803(6)(A)-(C), a record is not excluded by the rule

against hearsay if it meets the following requirements:

(A)    the record was made at or near the time by--or from information
       transmitted by--someone with knowledge;

(B)     the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]

(C)     making the record was a regular practice of that activity . . . .

Fed. R. Evid. 803(6)(A)-(C).   Rule 803(6) contemplates that "computer data compilations may be business records themselves, and should be treated as any other record of regularly conducted activity." *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980).

To establish the proper predicate for admission of business records under Rule 803(6), a custodian or qualified witness must testify as to "an exhibit's ability to qualify as a business record." *Weinhoffer v. Davie Shoring, Inc.*, 23 F.4th 579, 583 (5th Cir. 2022).   "[A] qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met," which requires that the witness is "familiar with the record keeping procedures of the organization." *Id.* (quotation omitted).   "There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008) (quotation omitted).

In this case, neither Mr. Barr's [144-1] nor Mr. Gallagher's Affidavits [144-2] provides sufficient information from which one could conclude that the requirements of Rule 803(6)(A)-(C) are satisfied.   *See* Fed. R. Evid. 803(6)(A)-(C); Barr Aff. [144-1] at 1; Gallagher Aff. [144-2] at 1.   Mr. Barr states that he "oversee[s] the processing of requests from electronic data from UPS package cars," that the records attached to his Affidavit include "Telematics data for package car

#571163 and its driver from April 18, 2019," and that the Telematics disclaimer is a standard one that is not unique to this case.   Barr Aff. [144-1] at 1.   Mr. Gallagher avers that he is UPS's "Telematics Manager," that he is "involved with the processing of requests of Telematics data from UPS package cars," and that the records attached to his Affidavit include "Telematics data for package car #571163 and its driver from April 18, 2019."   Gallagher Aff. [144-2] at 1.   According to Mr. Gallagher, counsel for UPS requested the Telematics data, the data was preserved through the Telematics software application, and the data was uploaded to an electronic storage system accessible to UPS counsel, who searched for and downloaded the data.   *Id.*

To the extent that either Mr. Barr or Mr. Gallagher could be deemed a "qualified" witness based upon the record before the Court, there is no indication from either affiant whether the Telematics data "was made at or near the time by-- or from information transmitted by--someone with knowledge," whether "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling," or whether "making the record was a regular practice of that activity."   Fed. R. Evid. 803(6)(A)-(C); *see also, e.g., United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019), *as revised* (Mar. 4, 2019) (noting that "certificates from a records custodian that track the language of Rule 803(6) nearly word for word render the records self-authenticating" (quotation omitted)).   Here, the failure of the Affidavits to satisfy Rule 803(6)(A)-(C) precludes a finding that the Telematics data is self-authenticating under Rule 902(11).   *See* Fed. R. Evid. 902(11).   Because Plaintiffs have not shown through either Affidavit that the

Telematics data meets the requirements of Rule 803(6)(A)-(C), it cannot deemed self-authenticating under Rule 902(11) on the current record.   *See* Fed. R. Evid. 902(11).

      *b.*   *Self-authentication under Rule 902(13)*

      Turning to self-authentication under Rule 902(13), the crux of the parties' dispute concerns the Rule's inclusion of the phrase "[a] record generated by an electronic process or system that *produces an accurate result* . . . ."   Fed. R. Evid. 902(13) (emphasis added); *see* Mot. [154] at 7-8.   Rule 902(13) became effective December 1, 2017, and the parties have not cited any controlling authority addressing what one must show to demonstrate the requisite accuracy it requires, nor has the Court located any such authority.[4]

      According to one learned treatise, "[a]ssuming Rule 902(13) is applicable to the evidence in question, the provision states that the evidence is self-authenticating if supported by the certification of a qualified person that the electronic process or system 'produces an accurate result.'" 31 Fed. Prac. & Proc. Evid. § 7147 (2d ed.).   "A challenge to the authenticity of electronic evidence may require technical information about the system or process at issue, including

---

[4]  Federal Rule of Evidence 901 mirrors the "produces an accurate result" language of Rule 902(13).   If evidence is not self-authenticating, Rule 901(a) requires a proponent of an exhibit to "produce evidence sufficient to support a finding that the item is what the proponent claims it is."   Fed. R. Evid. 901(a).   One example of evidence that satisfies this requirement is "[e]vidence describing a process or system and showing that it *produces an accurate result*."   Fed. R. Evid. 901(b)(9) (emphasis added); *see* Fed. R. Evid. 902 cmt. (2017) (stating that Rule 902(13) "specifically allows the authenticity foundation that satisfies Rule 901(b)(9) to be established by a certification rather than the testimony of a live witness").   However, the parties have not cited controlling authority interpreting the phrase with respect to Rule 901(b)(9) either.

possibly retaining a forensic technical expert . . . ."   Fed. R. Evid. 902 advisory

committee's note to 2017 amendment.   If an assertion of accuracy under Rule

902(13) requires specialized knowledge about the technology involved,

> the certification should establish that the person signing the
> certification qualifies as an expert in such matters.   In addition, the
> certificate should recite facts sufficient to establish that the "accurate
> result" opinion satisfies Federal Rule of Evidence 702's requirements for
> the admissibility of an expert opinion.   If specialized knowledge is not
> required to state an opinion as to the accuracy of the process or system,
> the certification should establish that the person signing the
> certification has sufficient personal knowledge regarding the process or
> system to state a lay opinion that it produces an accurate result and that
> the opinion is otherwise admissible under Federal Rule of Evidence 701.
> If the technology of the process or system is so well established that its
> accuracy is a matter of general knowledge, then this aspect of the item's
> authenticity may be established by judicial notice.

*Id.* (footnotes omitted).

In this case, neither Mr. Barr's nor Mr. Gallagher's Affidavits opine on the

accuracy of the Telematics data.   *See* Barr Aff. [144-1] at 1; Gallagher Aff. [144-2]

at 1.   Mr. Barr, who is National Counsel for UPS, "oversee[s] the processing of

requests for electronic data from UPS package cars," but he does not profess to be a

"qualified person" to establish whether the Telematics system produces an accurate

result.   Barr Aff. [144-1] at 1.   Although Mr. Barr's Affidavit explains that the

Telematics disclaimer is not specific to this case, which one could argue relates to

the accuracy of the data because this statement appears to be an effort to minimize

or negate the applicability of the disclaimer, the substance of Mr. Barr's Affidavit

does nothing to attempt to establish the accuracy of the Telematics system.   *See id.*

Mr. Gallagher is the "Telematics Manager" for UPS, and in that capacity he

is "involved with the processing of requests for Telematics data from UPS package

cars." Gallagher Aff. [144-2] at 1. His Affidavit explains how UPS's counsel requested the Telematics data and how it was preserved, uploaded, searched, and downloaded. *Id.* Even if Mr. Gallagher were a "qualified person" who could provide the needed certification under Rule 902(13), he has not spoken to the accuracy of the Telematics process or system, which is necessary in order for the records generated by such an electronic process or system to be self-authenticating. *See* Fed. R. Civ. P. 902(13); 31 Fed. Prac. & Proc. Evid. § 7147 (2d ed.).

Based upon the foregoing, Plaintiffs have not yet properly authenticated the Telematics data. To the extent Plaintiffs rely upon Rules 902(11) or 902(13) to self-authenticate the records without the need of a live witness, they have not produced sufficient certifications at this time, and as such the data would not be independently admissible at trial unless Plaintiffs come forth with additional certification or testimony to establish authenticity. *See* Fed. R. Civ. P. 902(11), (13). On the present record, Defendants' Motion should be granted to the extent it seeks a ruling that the Telematics data is not self-authenticating.[5]

**B.    The admissibility of Mr. Smith's expert testimony relying on the Telematics data**

**1.    The parties' arguments**

Defendants also seek to exclude Mr. Smith's expert testimony to the extent it relies upon the Telematics data, arguing that it does not meet the *Daubert* standard. *See* Mot. [154] at 11-15; Reply [160] at 6-10. According to Defendants,

---

[5]  This is not to say that Plaintiffs might not be able to properly authenticate the data at trial.

Mr. Smith was not involved in obtaining the Telematics data from UPS's systems and does not and cannot testify that the Telematics system correctly recorded Mr. Magee's route before the accident, or that the "nine pages of paper he reviewed are accurate." Mot. [154] at 12. While GPS data can generally be admissible, *see, e.g.*, *United States v. Ballesteros*, 751 F. App'x 579, 580 (5th Cir. 2019) (rejecting a plain error challenge to the admission of GPS data); *United States v. Brooks*, 715 F.3d 1069, 1078 (8th Cir. 2013) (collecting cases), Defendants insist that they have found no case in which GPS data was admitted where it contained disclaimers like those in this case, as "someone ordinarily vouches personally for the authenticity or reliability of the data; an accident reconstructionist or engineer testifies that he was trained in downloading the data, personally downloaded the data, and the machine used to download was working properly and was calibrated," and this did not happen in this case. *Id.* at 12-13. Simply put, Defendants assert that the Telematics data is not reliable, rendering Mr. Smith's expert testimony based upon that data unreliable and therefore inadmissible. *See id.* at 12-15.

Plaintiffs respond that, at a May 12, 2022, hearing before the previously assigned district judge, the Court denied Defendants' prior attempt to limit Mr. Smith's testimony, and Defendants did not seek reconsideration at that time. Resp. [159] at 2, 17. Plaintiffs point out that the Court denied without prejudice Defendants' request to exclude the Telematics data, with leave to reassert that request, but it did not grant Defendants additional time or leave to file a new *Daubert* motion. *See id.* at 3-4. Plaintiffs recognize that the Court's earlier ruling on the request to exclude Mr. Smith's expert testimony was interlocutory, but they

14

argue that the Court should "exercise its discretion and not revisit these issues." *Id.* at 3.

On the merits, Plaintiffs contend that Defendants' arguments confuse authentication requirements under Rule 902(13) with *Daubert* standards for a testifying expert.   *See id.* at 20-21.   Plaintiffs maintain that Mr. Smith's testimony is reliable and thus admissible and that any argument concerning the accuracy of the Telematics data based upon the disclaimers is simply fodder for cross-examination.   *See id.* at 17-22.

2.   <u>Analysis</u>

a.   *Untimeliness of Defendant's* Daubert *Motion*

Defendants' second attempt to exclude Mr. Smith under Rule 702 constitutes an untimely *Daubert* Motion and should be denied on this basis alone.   The motions deadline in this case passed over a year ago, on September 15, 2021.   *See* Order [59] at 1.   After that deadline, on October 5, 2021, Defendants filed a Motion [118] Requesting Consideration of *Daubert* Argument concerning Mr. Smith, in light of an argument that they had raised opposing Plaintiffs' Motion [104] for Sanctions. *See* Mot. [118].   The Court held a hearing on December 21, 2021, and ruled that, by the parties' January 18, 2022, motions in limine deadline, "Defendants may raise arguments related to the admissibility of the telematics data and the admissibility of the Plaintiffs' expert witness' opinion based upon the telematics data, but the Defendants may not raise an argument to completely exclude the Plaintiffs' expert witness from testifying at trial."   Order [122] a 2.

On the January 18, 2022, deadline, Defendants filed a Motion [124] in Limine

to Limit the Opinions and/or Testimony of Plaintiff's Expert Ben Smith, raising arguments under Rule 702 and *Daubert* and asking the Court to exclude those portions of Mr. Smith's opinions and testimony based upon Telematics data.   *See* Mot. [124].   Defendants also filed a Motion [125] in Limine requesting that the Court exclude the Telematics data as not properly authenticated and inadmissible hearsay.   *See* Mot. [125].

At a hearing held on May 13, 2022, the Court denied Defendants' Motion [125] in Limine as to the Telematics data without prejudice, finding that there appeared to be a way that Plaintiffs might be able to authenticate the Telematics data prior to trial.   *See* Tr. [158-5] at 16-17.   However, the Court clearly denied Defendants' Motion [124] seeking to exclude Mr. Smith's testimony.   *See id.* at 17-18; Order [141] at 3.   Even if the Telematics data were found to be inadmissible or unreliable, the Court reasoned that questions concerning the accuracy of the data constituted fodder for cross-examination but did not render Mr. Smith's expert opinions unreliable and inadmissible under Rule 702 and *Daubert*.   *See* Tr. [158-5] at 17-18.

Defendants have essentially re-urged their original *Daubert* Motion [124], offering the same arguments that were rejected by the previously-assigned district judge.   *Compare* Mot. [124], *with* Mot. [154].   When the case was reassigned, the Court set a December 1, 2022, deadline for filing motions in limine, but it did not reopen any other motions deadlines that had passed, including the deadline for any *Daubert* motions.   *See* Minute Entry, Oct. 31, 2022.   Defendants have not shown good cause for extending the motions deadline to permit such a filing.   *See* Fed. R.

Civ. P. 16(b)(4); *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d

805, 819 (5th Cir. 2019).   To the extent Defendants' current Motion [154] seeks to

exclude Mr. Smith's opinions, it is untimely and will be denied.

>   b.   *Reliability of Mr. Smith's opinions based upon Telematics data*

Even if Defendants' *Daubert* Motion [154] were timely, it should be denied on

the merits.   A district court "must ensure that any and all scientific testimony or

evidence admitted is not only relevant, but reliable."   *Daubert*, 509 U.S. at 589.

Under Rule 702,

> [a] witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise
> if:
> (a)     the expert's scientific, technical, or other specialized knowledge
>         will help the trier of fact to understand the evidence or to
>         determine a fact in issue;
> (b)     the testimony is based on sufficient facts or data;
> (c)     the testimony is the product of reliable principles and methods;
>         and
> (d)     the expert has reliably applied the principles and methods to the
>         facts of the case.

Fed. R. Civ. P. 702.   "Rule 702 charges trial courts to act as gate-keepers, and to

make a preliminary assessment of whether the reasoning or methodology

underlying the testimony is scientifically valid and of whether that reasoning or

methodology properly can be applied to the facts in issue."   *United States v. Hicks*,

389 F.3d 514, 525 (5th Cir. 2004) (quotation omitted).   Plaintiffs bear the burden of

establishing the admissibility of Mr. Smith's opinions based upon the Telematics

data.   *See United States v. Fullwood*, 342 F.3d 409, 412 (5th Cir. 2003).

Defendants do not challenge Mr. Smith's qualifications as an accident

reconstructionist but argue that his opinions are not reliable to the extent they rely

upon the Telematics data because the underlying data is itself unreliable.   *See* Mot.
[124].   In forming his opinions concerning the accident in question, however, Mr.
Smith considered numerous sources of information beyond the Telematics data,
including the accident report, the parties' and witnesses' depositions and
statements, the parties' initial disclosures, an inspection of the crash site, and other
items of evidence.   *See* Ex. [110-11] at 1-2 (listing the sources of information
analyzed).   In an effort to evaluate the parties' differing accounts of Mr. Magee's
path of travel in the moments prior to the crash, Mr. Smith analyzed the Telematics
GPS data and correlated it with additional data, such as the time noted in the crash
report, in order to reach his conclusions summarizing Mr. Magee's movements prior
to the incident.   *See id.* at 10-14.

In considered the reliability of expert testimony, the Court is to focus "solely
on principles and methodology, not on the conclusions that they generate."
*Daubert*, 509 U.S. at 596.   A court has "broad discretion to determine whether a
body of evidence relied upon by an expert is sufficient to support that expert's
opinion."   *Sims v. Kia Motors of Am., Inc.*, 839 F.3d 393, 400 (5th Cir. 2016)
(quotation omitted).

Although the reliability analysis applies to all aspects of an expert's
testimony, including the facts underlying the expert's opinion, *see Knight v. Kirby
Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007), "[a]s a general rule, questions
relating to the bases and sources of an expert's opinion affect the weight to be
assigned that opinion rather than its admissibility and should be left for the jury's
consideration," *United States v. Hodge,* 933 F.3d 468, 478 (5th Cir. 2019), *as revised*

(Aug. 9, 2019) (quotation omitted); *see also, e.g., Puga v. RCX Sols., Inc.*, 922 F.3d 285, 294 (5th Cir. 2019) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility."). "Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Puga*, 922 F.3d at 294. Defendants focus upon the reliability of the Telematics data in light of the disclaimer, *see* Mot. [154], but Plaintiffs "need not prove to the judge that the expert's testimony is correct, but [they] must prove by a preponderance of the evidence that the testimony is reliable," *In re: Taxotere (Docetaxel) Prod. Liab. Litig.*, 26 F.4th 256, 268 (5th Cir. 2022) (quotation omitted).

Having reviewed Mr. Smith's report, including his analysis of the crash and all of the parties' and witnesses' accounts and other evidence, regardless of the concerns about the Telematics data, it constitutes sufficient facts or data from which an accident reconstructionist like Mr. Smith could plot a vehicle's path, and it appears that Mr. Smith used reliable principles and methods to reach his opinions in this case. *See* Fed. R. Evid. 702; Ex. [110-11].

Based upon the record here, the Court finds that Defendants' *Daubert* argument that the Telematics data itself is unreliable goes more to the weight to be accorded Mr. Smith's opinions than to their admissibility. *See id.*; *Hodge,* 933 F.3d at 478. The determination of the accuracy of that evidence is one for the jury. *See*

*Puga*, 922 F.3d at 294.    Defendants' request to exclude Mr. Smith's opinions based

upon the Telematics data should be denied for this reason as well.

C.    Paragraph 4 of the Affidavit of Matthew Barr [144-1]

        In the alternative, Defendants argue that paragraph 4 of Barr's Affidavit

should be excluded.    *See* Mot. [154] at 15.    This paragraph reads as follows:

> The Telematics Disclaimer attached to the Telematics data in Exhibit A
> is a standard disclaimer that is produced with each set of Telematics
> data.    This disclaimer is not unique to the Telematics data produced in
> this case and which is contained in Exhibit A.

Barr Aff. [144-1] at 1.

        The Court has already concluded that Mr. Barr's Affidavit is not sufficient to

render the Telematics data self-authenticating under Rule 902, which makes

Defendants' request to exclude paragraph 4 moot.    Moreover, Plaintiffs represent

that they have "no intention to separately introduce" Mr. Barr's Affidavit, only the

Telematics data itself.    Resp. [158] at 8; *see id.* at 8-10.    This portion of

Defendants' Motion [154] should therefore be denied as moot.

III.    CONCLUSION

        To the extent the Court has not specifically addressed the parties' remaining

arguments, it has considered them and determined that they would not alter the

result.

        **IT IS, THEREFORE, ORDERED AND ADJUDGED,** that the Motion

[154] in Limine filed by Defendants Michael R. Noe d/b/a On Time Shipping and

James L. Hilliard is **GRANTED IN PART**,[6]  to the extent it seeks a ruling that the

---

[6] Nevertheless, Plaintiffs may be able to properly authenticate the data at trial with

UPS Telematics data is not self-authenticating based upon the current record, and

**DENIED IN PART**, to the extent it seeks to exclude the expert testimony of

Benjamin N. Smith and paragraph 4 of Matthew Barr's Affidavit [144-1].

**SO ORDERED AND ADJUDGED**, this the 5th day of January, 2023.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

sufficient additional certifications or testimony.